**NATIONAL ENTERPRISES, INC., Plaintiff,**

v.

**R.G. MOORE, Defendant.**

**Action No. 2:96cv489.**

United States District Court, E.D. Virginia, Norfolk Division.

Dec. 16, 1996.

---

Clement Jay Robbins, Nunnally & Robbins, Norfolk, VA, for plaintiff.

Gregory Albert Giordano, Shuttleworth, Ruloff & Giordano, Virginia Beach, VA, for defendant.

## OPINION AND ORDER

MILLER, United States Magistrate Judge.

This matter comes before the Court on the parties' cross-motions for summary judgment. Both parties have consented to have all proceedings in this case conducted before a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73.

### I. FACTUAL AND PROCEDURAL BACKGROUND

The plaintiff, National Enterprises, Inc. ("National Enterprises"), instituted this diversity action against the defendant, R.G. Moore ("Moore"), as the original maker of a note dated November 2, 1987, in the face amount of $130,000 ("the Note"). The lender on the note was Investors Savings Bank. A second note, renewing this particular loan and modifying its maturity date, was executed on November 2, 1988. Like the first note, the lender on the second note was Investors Savings Bank and the maker was the defendant, R.G. Moore.

By order dated December 12, 1991, the Resolution Trust Corporation ("RTC") was appointed receiver for Investors Savings Bank by the Director of the Office of Thrift Supervision and the RTC assumed control of the bank's assets, including the Note.

In December 1995, the RTC assigned the Note to Morehouse Acquisitions No. 1, LLC, ("Morehouse"). On or about February 20, 1996, Morehouse assigned all of its rights, title and interest in the Note to the plaintiff, National Enterprises, a California corporation whose business includes the purchase of notes and security interests from auctions

conducted by the Resolution Trust Corporation and similar federal agencies.

The plaintiff filed a complaint on May 17, 1996, alleging it is now the holder of the Note, that the Note is in default, and that the amount due is $171,671.18 plus interest accruing at a rate of $33.48 per day. The defendant, R.G. Moore, filed an answer on June 6, 1996. On July 16, 1996, both parties consented to proceed before a United States Magistrate Judge.

This matter comes before the Court on cross-motions for summary judgment pursuant to Federal Rule of Civil Procedure 56(c). The defendant filed a motion for summary judgment [1] on October 29, 1996. On November 12, 1996, the plaintiff filed a motion for summary judgment with supporting memorandum which also served as an opposition brief to the defendant's motion for summary judgment. On November 15, 1996, the defendant filed a reply brief.

Plaintiff contends that this action on the Note is timely because, as an assignee of the RTC, it acquired the same rights as the original assignor and therefore succeeded to the six-year statute of limitations provided in 12 U.S.C. § 1821(d)(14)(A) and (B) [2] of the Federal Institutions Reform, Recovery and Enforcement Act of 1989 ("FIRREA") [3], Pub.L. No. 101–72, 103 Stat. 277. It is plaintiff's position that under 12 U.S.C. § 1821(d)(14)(B)(i), the claim accrued on the date of the RTC's appointment as receiver, December 12, 1991. Applying the six-year statute of limitations, plaintiff asserts that any action to collect on the Note may be initiated before December 12, 1997. Defendant concedes liability on the Note if the statute of limitations issue is resolved in favor of the plaintiff.

However, the defendant contests the application of the federal limitations period and asserts that any action on the Note is time-barred by the running of the five-year statute of limitations for written contracts provided for in Virginia Code section 8.01–246(2). [4] It is the defendant's position that

---

1. Defendant's motion was titled "Motion to Dismiss or in the Alternative Motion for Summary Judgment." However, if, on a Fed.R.Civ.P. 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Fed.R.Civ.P. 56. Fed.R.Civ.P. 12(b). Because defendant attached exhibits outside the pleading to his supporting memorandum, the Court will treat his motion as one for summary judgment.

2. These relevant portions of the FIRREA read as follows:

    (A) In general. Notwithstanding any provision of any contract, the applicable statute of limitations with regard to any action brought by the Corporation as conservator or receiver shall be—
    (i) in the case of any contract claim, the longer of—
    (I) the 6–year period beginning on the date the claim accrues; or
    (II) the period applicable under State law.

    (B) Determination of the date on which a claim accrues. For purposes of subparagraph (A), the date on which the statute of limitations begins to run on any claim described in such subparagraph shall be the later of—
    (i) the date of the appointment of the Corporation as conservator or receiver; or

    (ii) the date on which the cause of action accrues.

3. The FIRREA governs the procedures under which federally chartered corporations acting as agents of the United States become receivers or conservators of failed federally insured financial institutions. Its principal application is to the Federal Deposit Insurance Corporation ("FDIC"). However, when acting as receiver of an insured depository institution, the RTC is deemed to be an agent of the United States and has the same rights and powers as does the FDIC under FIRREA. 12 U.S.C. §§ 1441a(b)(1)(A), 1441a(b)(4)(A).

4. The Note was executed in 1987 and 1988, prior to the enactment of Title 8.3A of the Code of Virginia. Therefore, the applicable state statute of limitations is governed by the rules found in superseded Title 8.3. The parties have treated the Note as a demand note rather than a note payable at a definite time although the Note provided for a specific payment date if no demand was made before that time. Because the matter is not relevant to the ultimate issue in this case, this Court will assume, without deciding, that the parties have correctly treated the Note as a pure demand note.

    Under former Virginia Code section 8.3–122(1)(b), the cause of action on a pure demand note accrued upon its execution. At that time, demand notes were subject to the five-year statute of limitations applicable to contracts generally. Va.Code Ann. § 8.01–246(2).

the five-year statute of limitations began running on November 2, 1988, the date of the second note's execution, and expired on November 2, 1993. Defendant cites a recent case from this district, *WAMCO, III, Ltd. v. First Piedmont Mortg. Corp.*, 856 F.Supp. 1076 (E.D.Va.1994), in support of his proposition. The court in *WAMCO, III, Ltd. v. First Piedmont Mortg. Corp.* held that the extended FIRREA statute of limitations did not apply to an assignee of the RTC who was the holder of a defaulted demand note. The court reasoned that the plain language of the federal statute indicated that the FIRREA six-year statute of limitations was a personal benefit which was uniquely tied to the status of the RTC, a government chartered corporation, as receiver, and thus was not an assignable right.

After a review of the memoranda submitted by the parties and the applicable case law, the Court concludes that under Virginia law, an assignee of an instrument acquires any right of the assignor to enforce that instrument, and therefore, the plaintiff is entitled to the six-year statute of limitations afforded to the RTC under the FIRREA. Accordingly, plaintiff National Enterprise's motion for summary judgment should be GRANTED and defendant Moore's motion for summary judgment should be DENIED.

## II. *STANDARD FOR A SUMMARY JUDGMENT MOTION*

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted only if "there is no genuine issue as to any material fact and the ... moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). For the evidence to present a "genuine" issue of material fact, it must be "such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Facts are deemed material if they might affect the outcome of the case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In other words, the moving party's submission must foreclose the possibility of the existence of facts from

which it would be open to a jury to make inferences favorable to the non-movant. *Id.*

In deciding a summary judgment motion, the court must view the record as a whole and in the light most favorable to the nonmoving party. *Terry's Floor Fashions, Inc. v. Burlington Indus., Inc.*, 763 F.2d 604, 610 (4th Cir.1985). "If, however, 'the evidence is so one-sided that one party must prevail as a matter of law,' we must affirm the grant of summary judgment in that party's favor." *O'Connor v. Consolidated Coin Caterers Corp.*, 56 F.3d 542, 545 (4th Cir.1995) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2511–12, 91 L.Ed.2d 202 (1986)). Either party may submit as evidence "pleadings, depositions, answers to interrogatories, and admissions on file, together with ... affidavits" to support or rebut a summary judgment motion. Fed. R.Civ.P. 56(c). Supporting and opposing affidavits must be based on personal knowledge and must set forth facts that would be admissible in evidence. *Id.* at 56(e). Furthermore, the party moving for summary judgment need not supply "affidavits or other similar materials negating the opponent's claim." *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2553.

Rule 56 mandates a grant of summary judgment against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552. The party who bears the burden of proving a particular element of a claim must "designate 'specific facts showing there is a genuine issue for trial'" with respect to that element. *Id.* at 324, 106 S.Ct. at 2553 (quoting Fed.R.Civ.P. 56(e)).

When a motion for summary judgment is made and supported by affidavits as provided for in Rule 56, an adverse party may not rest upon mere allegations or denials of the moving party's pleadings. Rather, the rule requires the nonmoving party's response, by affidavits or as otherwise provided for in Rule 56, to set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment if appropriate, should be entered

against the nonmoving party. Fed.R.Civ.P. 56(e); *Atkinson v. Bass,* 579 F.2d 865, 866 (4th Cir.), *cert. denied,* 439 U.S. 1003, 99 S.Ct. 615, 58 L.Ed.2d 679 (1978).

■ In addition, the opposing party is entitled under Rule 56(f) to set forth in affidavit reasons why he is presently unable to present by evidentiary affidavit facts essential to justify his opposition. Fed.R.Civ.P. 56(f); *Atkinson,* 579 F.2d at 866. If the reasons are adequate, the trial judge has broad discretion to determine whether to deny the motion for summary judgment, order a continuance, or make some other just disposition. *Id; see also Evans v. Technologies Applications & Serv. Co.,* 80 F.3d 954, 961 (4th Cir.1996). With these controlling principles in mind, the Court turns to the merits of the respective motions.

### III. *ANALYSIS*

■ This is a diversity action. When a federal court sits in diversity, it is bound by applicable state substantive law. 28 U.S.C. § 1652 (1996); *Erie R. Co. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938); *Benner v. Nationwide Mut. Ins. Co.,* 93 F.3d 1228, 1234 (4th Cir.1996).

The present case deals with a right to recover derived not from the United States but from one of the States. When, because the plaintiff happens to be a nonresident, such a right is enforceable in a federal as well as in a State court, the forms and mode of enforcing the right may at times vary because the two judicial systems are not identical.

> But since a federal court adjudicating a state-created right solely because of the diversity of citizenship of the parties is for that purpose, in effect, only another court of the State, it cannot afford recovery if the right to recover is made unavailable by the State nor can it substantially affect the enforcement of the right as given by the State.

*Guaranty Trust Co. of New York v. York,* 326 U.S. 99, 108–09, 65 S.Ct. 1464, 1469–70, 89 L.Ed. 2079 (1945).

■ The intent of *Erie R. Co. v. Tompkins* was to insure that in all cases, where a federal court is exercising jurisdiction solely because of the diversity of citizenship, the outcome of the litigation in federal court should be substantially the same as it would be in a State court. For the same transaction, the accident of a suit by a non-resident litigant in a federal court instead of in a State court a block away should not lead to a substantially different result. *Id.* at 109, 65 S.Ct. at 1469–70. The twin aims of the rule of *Erie R. Co. v. Tompkins* are discouragement of forum-shopping and avoidance of inequitable administration of the laws. *Hanna v. Plumer,* 380 U.S. 460, 467, 85 S.Ct. 1136, 1141–42, 14 L.Ed.2d 8 (1965).

■ The Supreme Court of Virginia has recently addressed the precise issue in this case. In *Union Recovery Ltd. Partnership v. Horton,* 252 Va. 418, 477 S.E.2d 521 (1996), the Supreme Court of Virginia held that the six-year statute of limitations contained in 12 U.S.C. § 1821(d)(14)(A) and (B) extends to assignees of the RTC. The court first examined the language of the FIRREA statute for any discussion of the rights of assignees of the RTC. Finding none, it relied on the reasoning of *FDIC v. Bledsoe,* 989 F.2d 805, 810 (5th Cir.1993), and held that in the face of the statute's silence, rules of statutory construction required the court to fill the gap by reference to the principles of the common law of assignments.

The court then relied on the "well established law in Virginia" that an assignee's rights are derivative of the assignor's rights and thus, an assignee "stands in the shoes" of the assignor when pursuing an action on a contract or instrument assigned. *Union Recovery,* 477 S.E.2d at 523–24. Although the Supreme Court of Virginia cited only one decision in support of this proposition, *National Bank and Trust Co. of Charlottesville v. Castle,* 196 Va. 686, 85 S.E.2d 228, 232 (1955), the Virginia Commercial Code also speaks directly to the issue of the rights acquired by an assignee of an instrument. Under Virginia Code section 8.3A–203(b), the transfer of an instrument vests in the transferee "any right of the transferor to enforce the instrument" unless the transferee engaged in fraud or illegality affecting the in-

strument. Va.Code Ann. § 8.3A–203(b) (1996).

Defendant argues that although this is a diversity case, state substantive law is not binding on the Court. He asserts that this case does not involve the interpretation of Virginia law, but the interpretation of a federal statute. Specifically, he urges the Court to adopt the reasoning of the *WAMCO, III, Ltd. v. First Piedmont Mortg. Corp.* decision and find that the plain language of the federal statute provides only for actions brought by the RTC as conservator or receiver and precludes resorting to state substantive law. However, defendant concedes that if this case were filed in state court, the decision of the Supreme Court of Virginia in *Union Recovery Ltd. Partnership v. Horton* would be binding.

Defendant asserts that the *WAMCO, III, Ltd. v. First Piedmont Mortg. Corp.* decision rests on much more thorough and precise analysis than the Supreme Court of Virginia's terse conclusion in *Union Recovery Ltd. Partnership v. Horton.* While this Court agrees that the Supreme Court of Virginia's evaluation of this issue was succinct indeed, the court specifically cited and rejected the *WAMCO, III, Ltd. v. First Piedmont Mortg. Corp.* decision. While the court did not choose to analyze the issue the way Judge Payne did in the *WAMCO, III, Ltd. v. First Piedmont Mortg. Corp.* case, the Supreme Court of Virginia has the last word on the application of Virginia law. Thus, this Court has no need to second-guess the Supreme Court of Virginia's analysis or further distinguish the *WAMCO, III, Ltd. v. First Piedmont Mortg. Corp.* decision.

■ Defendant does correctly argue that the Court must first look to the federal statute itself, and must regard the clear and unambiguous language of the statute as conclusive. *North Dakota v. United States,* 460 U.S. 300, 312, 103 S.Ct. 1095, 1102, 75 L.Ed.2d 77 (1983). However, the Court does not agree that the plain language of the FIRREA statute prohibits the RTC from assigning the benefit of the six-year period. Finding that the FIRREA statute does not address the rights of the RTC's assignees, under the reasoning of *FDIC v. Bledsoe,* the

Court must determine what rights, under Virginia law, pass to an assignee of the RTC. The answer to that question is authoritatively declared in Virginia Code section 8.3A–203(b) and in the *Union Recovery Ltd. Partnership v. Horton* decision: unless a contrary intention is manifest or inferable, an assignee of an instrument acquires the same rights as the assignor to enforce that instrument except those rights which are personal to the assignor and for his benefit only. Thus, the Court finds that the plaintiff, an assignee of the RTC, is entitled to the benefit of the six-year statute of limitations provided for in the FIRREA.

Further, the argument defendant proposes would lead to the very type of inconsistent results that were the impetus for the *Erie R. Co. v. Tompkins* decision. According to the defendant, the plaintiff could recover on the Note in a Virginia state court because the FIRREA six-year statute of limitations would apply, but a federal court sitting in Virginia must dismiss the suit simply because there is diversity of citizenship between the parties. The *Erie* rule is rooted in part in a realization that it would be unfair for the character of result of a litigation materially to differ because of the fortuitous circumstance of a residence out of a State of one of the parties. *Hanna v. Plumer,* 380 U.S. at 467, 85 S.Ct. at 1141–42. Moreover, the Court notes that this decision furthers the public policy of assuring the assets of failed banks and federally insured depository institutions the broadest possible market.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS plaintiff National Enterprises' motion for summary judgment and DENIES defendant R.G. Moore's motion for summary judgment. The Court ORDERS the Clerk to enter judgment in favor of the plaintiff.

However, this is NOT a FINAL ORDER. The parties have indicated that they are able to stipulate to the amount of principal and interest owing on the Note and reasonable attorneys' fees. The parties are hereby ORDERED to file such stipulation with this Court indicating (1) the amount of principal

and interest owed on the Note as of January 3, 1997, and (2) reasonable attorneys' fees owed as of January 3, 1997. This stipulation must be filed by January 3, 1997.

If the parties are unable to stipulate to these amounts, the plaintiff must file a motion by January 3, 1997, setting forth the amount of principal and interest owed on the Note and the plaintiff's request for attorneys' fees. The defendant may file a response by January 14, 1997. If no hearing is requested by the parties, the Court will promptly determine these issues.