Lonnie WICKLIFFE, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 11–527 C.

United States Court of Federal Claims.

Dec. 20, 2011.

Lonnie Wickliffe, Ecorse, MI, pro se.

John J. Todor, United States Department of Justice, Washington, DC, for defendant.

## OPINION AND ORDER

SWEENEY, Judge.

Before the court is defendant's motion to dismiss. In this *pro se* case, plaintiff Lonnie Wickliffe alleges that the United States breached contractual obligations purportedly created between him and the government in President Abraham Lincoln's Emancipation Proclamation. He also asserts that the United States failed to perform its official obligations, contending that the government's negligence caused an economic downturn that damaged his emotional and psychological well-being. Defendant moves to dismiss the complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Rules of the United States Court of Federal Claims ("RCFC"). Although the court afforded plaintiff ample opportunity to file a response brief, he did not do so, and the court determines that, given plaintiff's silence, there is no reason to delay its ruling. For the reasons set forth below, defendant's motion is granted.

## I. BACKGROUND

According to plaintiff, the United States, "on or about[ ] May 25, 2011," breached obligations to plaintiff set forth in the Emancipation Proclamation. Compl. ¶ V. Plaintiff also references a proposed treaty between the United States and the "Bantu of Nations–United," *id.* ¶ II; Pl.'s Ex. 4, though the nature of his allegations are unclear. It further appears that plaintiff alleges Tucker Act jurisdiction for the breach of a purported

contract, claiming that the recent downgrade in the United States' credit rating by Standard & Poor's was the result of "negligence, ... malfeasance, non-feasance [sic], negligence in performance of and/or failure to perform in a skillful, diligent, responsible, and/or reasonable manner...." Compl. ¶ VI. Plaintiff theorizes that, had the government exercised "proper diligence and skill," the economy would have improved, the G.I. Bill "would had been [sic] still part of [his] health product," and the nation would have been the beneficiary of "[f]ruits of diligent and skillful work product." *Id.* Plaintiff contends that he has incurred "emotional and psychological stresses" as a result of the government's purported breach, *id.*, and he seeks $645,247.76 in general damages and $2,000,000 in punitive damages. He also requests that the court waive his filing fee.[1]

Previously, plaintiff filed several *pro se* cases in various jurisdictions. In 1996, plaintiff, while incarcerated in an Indiana state correctional facility, filed a complaint in the United States District Court for the District of Columbia ("D.C. district court"), which was dismissed *sua sponte. Wickliffe v. Reno,* No. 1:96–cv–525–UNA (D.D.C. Mar. 18, 1996) (order dismissing complaint), *aff'd,* No. 96–5098 (D.C.Cir. June 19, 1997). In 2001, the United States Court of Appeals for the Seventh Circuit sanctioned plaintiff for "a voluminous history of frivolous litigation" and "barred [him] from proceeding in forma pauperis in any future filings." *Wickliffe v. Anderson,* 23 Fed.Appx. 538, 538 (7th Cir. 2001). In 2007, the Court of Federal Claims dismissed for lack of jurisdiction plaintiff's lawsuit seeking compensation for alleged posttraumatic stress disorder associated with his military service. *See Wickliffe v. United States,* No. 07–514C, 2007 WL 5173630 (Fed. Cl. July 16, 2007), *recon. denied,* 2007 WL 5173587 (Fed.Cl. Sept. 26, 2007). More recently, plaintiff unsuccessfully moved the United States Court of Appeals for the District of Columbia Circuit ("D.C. Circuit") to recall the mandate in his D.C. district court case. *See Wickliffe,* No. 96–5098, slip op. at 1 (D.C.Cir. July 27, 2011) (determining that plaintiff did not present extraordinary circumstances necessary to warrant an appeal).

Plaintiff filed his complaint in these proceedings on August 22, 2011. On October 7, 2011, he filed with the United States Court of Appeals for the Federal Circuit ("Federal Circuit") a petition for a writ of mandamus to direct the Court of Federal Claims to provide him "with a true, complete, and accurate copy and answers to the served[ ] request for Calls and Discovery" and an "alternative writ" to direct the D.C. Circuit to provide him with copies of the record in his D.C. district court case. The Federal Circuit denied plaintiff's petition for a writ of mandamus and dismissed his "alternative writ" on November 14, 2011. *See In re Wickliffe,* 438 Fed.Appx. 900 (Fed.Cir.2011). Defendant moved to dismiss the complaint and, as noted above, plaintiff never filed a response to defendant's motion.

## II. LEGAL STANDARDS

### A. *Pro Se* Plaintiffs

■ The Court of Federal Claims holds pleadings of a *pro se* plaintiff to less stringent standards than those filed by litigants represented by counsel. *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d

---

1. Pursuant to 28 U.S.C. § 1915(a)(1),

 any court of the United States may authorize the commencement, prosecution or defense of any suit, action or proceeding, civil or criminal, or appeal therein, without prepayment of fees or security therefor, by a person who submits an affidavit that includes a statement of all assets.... Such affidavit shall state the nature of the action, defense or appeal and affiant's belief that the person is entitled to redress.

 While the United States Court of Federal Claims ("Court of Federal Claims") is not considered a "court of the United States" within the meaning of title 28 of the United States Code, the court has jurisdiction to grant or deny an application to proceed *in forma pauperis. See* 28 U.S.C. § 2503(d) (2006) (deeming the Court of Federal Claims to be "a court of the United States" for the purposes of section 1915); *see also Matthews v. United States,* 72 Fed.Cl. 274, 277–78 (2006) (recognizing that Congress enacted the Court of Federal Claims Technical and Procedural Improvements Act of 1992, authorizing, *inter alia,* the court to adjudicate applications to proceed *in forma pauperis* pursuant to section 1915). Plaintiff, however, has not complied with the requirements set forth in 28 U.S.C. § 1915(a)(1) and, as a result, has not established entitlement to proceed *in forma pauperis.*

652 (1972). Courts have "strained [their] proper role in adversary proceedings to the limit, searching ... to see if plaintiff has a cause of action somewhere displayed." *Ruderer v. United States,* 412 F.2d 1285, 1292 (Ct.Cl.1969). Although plaintiff's pleadings are held to a less stringent standard, such leniency "with respect to mere formalities does not relieve the burden to meet jurisdictional requirements." *Minehan v. United States,* 75 Fed.Cl. 249, 253 (2007); *see also Kelley v. Sec'y, U.S. Dep't of Labor,* 812 F.2d 1378, 1380 (Fed.Cir.1987) ("[A] court may not similarly take a liberal view of that jurisdictional requirement and set a different rule for *pro se* litigants only."); *Bernard v. United States,* 59 Fed.Cl. 497, 499 (noting that *pro se* plaintiffs are not excused from satisfying jurisdictional requirements), *aff'd,* 98 Fed.Appx. 860 (Fed.Cir.2004). As the Court of Federal Claims stated in *Demes v. United States,* "[w]hile a court should be receptive to *pro se* plaintiffs and assist them, justice is ill-served when a jurist crosses the line from finder of fact to advocate." 52 Fed.Cl. 365, 369 (2002).

## B. Subject Matter Jurisdiction

 Whether the court possesses jurisdiction to decide the merits of a case is a threshold matter. *See Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 94–95, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998); *see also Matthews,* 72 Fed.Cl. at 278 (stating that subject matter jurisdiction is "an inflexible matter that must be considered before proceeding to evaluate the merits of a case"). "Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." *Ex parte McCardle,* 74 U.S. (7 Wall.) 506, 514, 19 L.Ed. 264 (1868). The parties or the court *sua sponte* may challenge the court's subject matter jurisdiction at any time. *Arbaugh v. Y & H Corp.,* 546 U.S. 500, 506, 126 S.Ct. 1235, 163 L.Ed.2d 1097 (2006).

 The ability of the Court of Federal Claims to entertain suits against the United States is limited. "The United States, as sovereign, is immune from suit save as it consents to be sued." *United States v. Sherwood,* 312 U.S. 584, 586, 61 S.Ct. 767, 85 L.Ed. 1058 (1941). A waiver of immunity "cannot be implied but must be unequivocally expressed." *United States v. King,* 395 U.S. 1, 4, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969). Thus, unless Congress consents to a cause of action against the United States, "there is no jurisdiction in the Court of Claims more than in any other court to entertain suits against the United States." *Sherwood,* 312 U.S. at 587–88, 61 S.Ct. 767.

 The Tucker Act confers upon the Court of Federal Claims jurisdiction to "render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). Although the Tucker Act waives the sovereign immunity of the United States for claims for money damages, it "itself does not create a substantive cause of action; in order to come within the jurisdictional reach and the waiver of the Tucker Act, a plaintiff must identify a separate source of substantive law that creates the right to money damages." *Fisher v. United States,* 402 F.3d 1167, 1172 (Fed.Cir. 2005) (en banc portion). The separate source of substantive law must constitute a "money-mandating constitutional provision, statute or regulation that has been violated, or an express or implied contract with the United States." *Loveladies Harbor, Inc. v. United States,* 27 F.3d 1545, 1554 (Fed.Cir.1994) (en banc); *accord Martinez v. United States,* 333 F.3d 1295, 1302–03 (Fed.Cir.2003) (en banc) ("The actions for which the Tucker Act waives sovereign immunity are actions pursuant to contracts with the United States, actions to recover illegal exactions of money by the United States, and actions brought pursuant to money-mandating constitutional provisions, statutes, regulations, or executive orders.").

## C. Motions to Dismiss

 Defendant moves to dismiss plaintiff's complaint pursuant to RCFC 12(b).

The court's "general power to adjudicate in specific areas of substantive law ... is properly raised by a [Rule] 12(b)(1) motion." *Palmer v. United States,* 168 F.3d 1310, 1313 (Fed.Cir.1999). When deciding an RCFC 12(b)(1) motion to dismiss, the court assumes all factual allegations are true and draws all reasonable inferences in the plaintiff's favor. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), *overruled on other grounds by Harlow v. Fitzgerald,* 457 U.S. 800, 814–19, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *United Pac. Ins. Co. v. United States,* 464 F.3d 1325, 1327–28 (Fed. Cir.2006).

■■■ The burden of establishing the court's subject matter jurisdiction resides with the party seeking to invoke it, *see McNutt v. Gen. Motors Acceptance Corp. of Ind.,* 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936), and a plaintiff must establish jurisdiction by a preponderance of the evidence, *Reynolds v. Army & Air Force Exch. Serv.,* 846 F.2d 746, 748 (Fed.Cir.1988). If the defendant or the court questions jurisdiction, the plaintiff cannot rely solely on allegations in the complaint but must bring forth relevant, adequate proof to establish jurisdiction. *See McNutt,* 298 U.S. at 189, 56 S.Ct. 780. When ruling upon a motion to dismiss for lack of subject matter jurisdiction, the court may examine relevant evidence in order to decide any factual disputes. *See Moyer v. United States,* 190 F.3d 1314, 1318 (Fed.Cir.1999); *Reynolds,* 846 F.2d at 747. If the court finds that it lacks subject matter jurisdiction, then it must dismiss the claim. *Matthews,* 72 Fed.Cl. at 278; *see also* RCFC 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

## III. DISCUSSION

### A. The Court Lacks Jurisdiction Over Plaintiff's Frivolous Allegations

■■■ The United States Supreme Court has stated that a court may dismiss a claim as factually frivolous "only if the facts alleged are 'clearly baseless,' a category encompassing allegations that are 'fanciful,' 'fantastic,' and 'delusional.'" *Denton v. Her-nandez,* 504 U.S. 25, 32–33, 112 S.Ct. 1728, 118 L.Ed.2d 340 (1992) (citations omitted) (quoting *Neitzke v. Williams,* 490 U.S. 319, 325, 327–28, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989)); *see also Moden v. United States,* 404 F.3d 1335, 1341–42 (Fed.Cir.2005) (construing "frivolous" as "insubstantial, implausible, foreclosed by prior decisions, or otherwise completely devoid of merit as not to involve a federal controversy"). A finding of factual frivolousness "is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible," and a determination that a claim is frivolous falls within the discretion of the trial court. *Denton,* 504 U.S. at 33, 112 S.Ct. 1728. In this case, the court determines that plaintiff's allegations, which are implausible and devoid of merit, are frivolous.

### 1. Plaintiff's Purported Contract Claim

■■■ In order to invoke Tucker Act jurisdiction based upon an express or implied-in-fact contract, a plaintiff must allege all the requisite elements of a contract with the United States, *see Harbert/Lummus Agrifuels Projects v. United States,* 142 F.3d 1429, 1434 (Fed.Cir.1998); *accord Peninsula Grp. Capital Corp. v. United States,* 93 Fed. Cl. 720, 731 (2010) (indicating that an implied-in-fact contract "requires the existence of the same elements as an express contract"), which consist of "a mutual intent to contract including offer, acceptance, and consideration," *Total Med. Mgmt., Inc. v. United States,* 104 F.3d 1314, 1319 (Fed.Cir.1997). "A contract with the United States also requires that the Government representative who entered or ratified the agreement had actual authority to bind the United States." *Trauma Serv. Grp. v. United States,* 104 F.3d 1321, 1325 (Fed.Cir.1997). Thus, "[a]nyone entering into an agreement with the Government takes the risk of accurately ascertaining the authority of the agents who purport to act for the Government, and this risk remains with the contractor even when the Government agents themselves may have been unaware of the limitations on their authority." *Id.*

■■■ Plaintiff does not allege the existence of any express or implied-in-fact con-

tract with the United States and does not allege facts demonstrating the existence of any elements required for contract formation. Furthermore, pursuant to RCFC 9(k), a party pleading a claim founded on a contract "must identify the substantive provisions of the contract ... on which the party relies." Plaintiff has not done so here. Because plaintiff does not allege any requisite elements of a contract between him and the United States, *Harbert/Lummus Agrifuels Projects,* 142 F.3d at 1434; *Trauma Serv. Grp.,* 104 F.3d at 1325, the court lacks jurisdiction over and must dismiss plaintiff's purported contract claim.

### 2. The Court Lacks Jurisdiction Over Plaintiff's Remaining Claims

 With respect to his remaining allegations, plaintiff has failed to identify any violation by the United States of a constitutional provision, statute, regulation, or executive order that affords him a right to monetary relief. First, the Emancipation Proclamation, which consists of two executive orders, *see* 12 Stat. 1267–69 (1862), does not give rise to any money damages claim that would confer jurisdiction upon the Court of Federal Claims. Second, although plaintiff appears to liken the Emancipation Proclamation to a purported treaty with the "Bantu of Nations–United," Compl. ¶ II, he does not identify the basis for which this alleged treaty creates a private right of action.[2] Moreover, unless otherwise specifically authorized by statute, the Court of Federal Claims lacks jurisdiction over "any claim against the United States growing out of or dependent upon any treaty entered into with foreign nations." 28 U.S.C. § 1502.

 Third, plaintiff seeks to invoke the court's jurisdiction based on 28 U.S.C. § 1492, which provides: "Any bill, except a bill for a pension, may be referred by either House of Congress to the chief judge of the

United States Court of Federal Claims for a report in conformity with section 2509 of this title." This case, of course, is not a congressional reference case. Furthermore, "[i]n congressional reference cases, the report from this Court to Congress is advisory in nature...." *Kanehl v. United States,* 38 Fed. Cl. 89, 96 (1997). To the extent plaintiff seeks an advisory opinion from the court, plaintiff would fail to meet the case or controversy requirement, *see* U.S. Const. art. III, § 2 ("The judicial Power shall extend to all Cases ... [and] to controversies...."), which is a justiciability doctrine invoked by the Court of Federal Claims, *see Anderson v. United States,* 344 F.3d 1343, 1350 n. 1 (Fed. Cir.2003) ("The Court of Federal Claims, though an Article I court, applies the same standing requirements enforced by other federal courts created under Article III." (citation omitted)); *Mass. Bay Transp. Auth. v. United States,* 21 Cl.Ct. 252, 257–58 (1990) ("Although established under Article I, the Claims Court traditionally has applied the case or controversy requirement unless jurisdiction conferred by Congress demands otherwise."). Therefore, plaintiff cannot rely upon 28 U.S.C. § 1492 to establish jurisdiction.

 Fourth, plaintiff asserts that his case is analogous to *Skokomish Indian Tribe v. United States,* 401 F.3d 979 (9th Cir.), *amended and superseded by* 410 F.3d 506 (9th Cir.2005), *cert. denied,* 546 U.S. 1090, 126 S.Ct. 1025, 163 L.Ed.2d 854 (2006), which he describes as a "similar treaty-case." Compl. ¶ II. In *Skokomish Indian Tribe,* the United States Court of Appeals for the Ninth Circuit construed the plaintiff's claims for breach of trust responsibilities as arising under the Indian Tucker Act, which confers upon the Court of Federal Claims jurisdiction over

any claim against the United States accruing after August 13, 1946, in favor of any tribe, band, or other identifiable group of

---

**2.** Plaintiff alleges that the "Bantu of Nations–United" treaty provides for "Treaty-plus-minerals-managing-services...." Compl. ¶ III. He cites two cases—*BP America Production Co. v. Burton,* 549 U.S. 84, 127 S.Ct. 638, 166 L.Ed.2d 494 (2006), and *Long, Long & Kellerman, P.C. v. Wheeler,* 264 Va. 531, 570 S.E.2d 822 (2002)-and

28 U.S.C. § 2415 in support of this claim. Yet, these decisions only address statute of limitations issues, and section 2415 pertains to the time for commencing actions brought by the United States. Furthermore, these decisions do not even mention the Bantu peoples.

American Indians residing within the territorial limits of the United States or Alaska whenever such claim is one arising under the Constitution, laws or treaties of the United States, or Executive orders of the President, or is one which otherwise would be cognizable in the Court of Federal Claims if the claimant were not an Indian tribe, band or group.

28 U.S.C. § 1505. The Indian Tucker Act "is identical to the Tucker Act, except that it specifies Indian tribes as eligible claimants." *Skokomish Indian Tribe*, 410 F.3d at 511 n. 3. Here, however, plaintiff does not bring a claim on behalf of an Indian tribe. As such, plaintiff's reliance upon *Skokomish Indian Tribe* to establish jurisdiction under the Indian Tucker Act is entirely misplaced.

▇▇▇▇ Fifth, plaintiff accuses the United States of "negligence in performance" and a purported failure "to perform in a skillful, diligent, responsible, and/or reasonable manner toward in Office obligations...." Compl. ¶ V; *see also id.* (referencing statements purportedly made by Minnesota Representative Michele Bachmann and by Grover G. Norquist, founder of the advocacy group Americans for Tax Reform, *see* http://www.atr.org/about (last visited Dec. 19, 2011), for reasons that are unclear). Claims of negligence sound in tort, *Rick's Mushroom Serv., Inc. v. United States*, 521 F.3d 1338, 1343 (Fed.Cir. 2008), and the Tucker Act does not confer upon this court jurisdiction over tort claims, *see* 28 U.S.C. § 1491(a)(1); *accord Trafny v. United States*, 503 F.3d 1339, 1340 (Fed.Cir. 2007) ("The court was also correct to hold that it lacks jurisdiction over tort claims."); *Shearin v. United States*, 992 F.2d 1195, 1197 (Fed.Cir.1993) ("It is well settled that the ... Court of Federal Claims lacks ... jurisdiction to entertain tort claims."). Furthermore, the Court of Federal Claims "does not have jurisdiction over claims that defendant engaged in negligent, fraudulent, or other wrongful conduct when discharging its official duties." *Cottrell v. United States*, 42 Fed.Cl. 144, 149 (1998).

▇▇▇ Finally, plaintiff seeks $200,000,000 in punitive damages. The Court of Federal Claims lacks jurisdiction to grant punitive damages, *Envtl. Safety Consultants, Inc. v. United States*, 95 Fed.Cl. 77, 98 (2010); *Mastrolia v. United States*, 91 Fed.Cl. 369, 382 (2010), and cannot entertain plaintiff's prayer for relief.

In sum, the court lacks jurisdiction over plaintiff's frivolous allegations. Accordingly, defendant's motion to dismiss pursuant to RCFC 12(b)(1) is granted, and the court need not address any alternative arguments in support of dismissal pursuant to RCFC 12(b)(6).

**B. Transfer to a Federal District Court is Inappropriate**

▇▇▇ "When a court lacks jurisdiction, the ordinary course is ... to dismiss...." *Phillips v. Seiter*, 173 F.3d 609, 610 (7th Cir.1999). Nevertheless, a court must transfer a claim over which it lacks jurisdiction to a court where it could have been brought under certain circumstances:

> Whenever a civil action is filed in a court as defined in section 610 of this title ... and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action ... to any other such court in which the action ... could have been brought.[3]

28 U.S.C. § 1631 (footnote added). Thus, in order to transfer a case, the court must determine that (1) it lacks subject matter jurisdiction; (2) at the time the case was filed, the case could have been brought in the transferee court; and (3) transfer is in the interest of justice. *Id.; United States v. John C. Grimberg Co.*, 702 F.2d 1362, 1364 n. 5, 1374 (Fed.Cir.1983) (en banc). A decision to transfer rests within the sound discretion of the transferor court, and the court may decline to transfer the case "[i]f such transfer 'would nevertheless be futile given the weakness of plaintiff's case on the merits.'" *Faulkner v. United States*, 43 Fed.Cl. 54, 56 (1999) (quoting *Siegal v. United States*, 38 Fed.Cl. 386, 390 (1997)).

---

**3.** Under 28 U.S.C. § 610, the term "court" includes "the courts of appeals and district courts of the United States, the United States District Court for the District of the Canal Zone, the District Court of Guam, the District Court of the Virgin Islands, the United States Court of Federal Claims, and the Court of International Trade."

"The basic test ... for determining if a case should be transferred is whether it would be in 'the interest of justice' to do so." *Busby School of N. Cheyenne Tribe v. United States*, 8 Cl.Ct. 588, 595 (1985). According to the Federal Circuit, "[t]he phrase 'if it is in the interest of justice' relates to claims which are nonfrivolous and as such should be decided on the merits." *Galloway Farms, Inc. v. United States*, 834 F.2d 998, 1000 (Fed.Cir.1987) (citing *Zinger Constr. Co. v. United States*, 753 F.2d 1053, 1055 (Fed.Cir.1985)). As explained above, plaintiff's allegations are frivolous. Transfer of this action to another federal court is therefore not in the interest of justice.

## IV. CONCLUSION

For the foregoing reasons, defendant's motion to dismiss is **GRANTED**. The clerk is directed to **DISMISS WITHOUT PREJUDICE** plaintiff's *pro se* complaint. No costs. Plaintiff is directed to pay the appropriate filing fee.

Absent further order of the court, the clerk shall not accept for filing any future complaints or postjudgment pleadings by plaintiff concerning the claims that are the subject of this order, nor shall defendant be obligated to respond, or be subject to default for failing to respond, to them. *See Sterner v. United States*, 2 Cl.Ct. 253 (1983).

**IT IS SO ORDERED.**